■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHAIM BALAS, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Zelman, J.), rendered April 12, 1983, convicting him of two counts of criminal possession of a controlled substance in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Sharpe, J.), of defendant's pretrial motion to suppress physical evidence and a statement.

Judgment affirmed and matter remitted to the Supreme Court, Queens County, for further proceedings pursuant to CPL 460.50 (subd 5).

On January 29, 1982, New York Racing Association Special Police Officer Victor Natale observed defendant conversing with one Jonathan Kort on the third floor of the grandstand at

Aqueduct Race Track. Officer Natale and his partner, Arthur Drucker, were assigned to plain-clothes duty and had defendant's companion under observation because Kort was suspected of trafficking in drugs and was the subject of an ongoing drug investigation. The officers followed defendant and Kort to an isolated stairwell at the extreme north end of the grandstand. This stairwell had been the site of prior narcotic arrests effectuated by Officer Natale. Looking through the glass panel in the door leading to the stairwell, Officer Natale saw defendant hand Kort a small paper packet. The paper packet was partially open and inside it was an aluminum foil packet, approximately one inch long and a half inch wide. As Kort began to open the foil packet, Officers Natale and Drucker entered the stairwell, seized the packet and arrested both defendant and Kort. Officer Natale read defendant his *Miranda* rights and asked him if he had "any other stuff". In response to this inquiry, defendant removed three additional packets from his coat pocket. When asked what was in the packets, defendant replied "coke". Shortly thereafter, a bag containing approximately one ounce of cocaine was recovered from the lining of defendant's coat. A quantity of straws was also recovered.

Defendant contends that Criminal Term erred in denying his motion to suppress the physical evidence and his statement because Officers Natale and Drucker lacked probable cause to arrest him. We disagree.

In *People v McRay* (51 NY2d 594, 604), the Court of Appeals characterized the glassine envelope as "the hallmark of an illicit drug exchange". Although the mere transfer of a glassine envelope is insufficient to establish probable cause, the court noted that (p 598) "[i]n the present day culture, such evidence presents such a strong clue of criminality that little more by way of relevant facts or circumstances is required in supplementation to justify the arrest".

In this case, a foil packet in which cocaine is commonly packaged is certainly analogous to the glassine envelope in *McRay* and can be considered a telltale sign, if not the hallmark, of an illicit drug exchange.

In determining whether there was additional relevant behavior or circumstances which, coupled with the transfer of the foil packet, would raise the level of inference from suspicion to probable cause, deference must be given to an officer's evaluation of the circumstances in light of his experience and training (see *People v Alexander,* 37 NY2d 202; *People v Corrado,* 22 NY2d 308, 313-314). In this case, Natale was a trained and experienced officer who had made more than 100 drug-related

arrests during his 20-year tenure with the New York City Police Department and 30 to 40 drug-related arrests during his five and one-half years as a special police officer for the New York Racing Association. The majority of the latter drug arrests, which included five arrests for illicit cocaine transactions, were effectuated at Aqueduct Race Track. As a veteran officer, Natale was cognizant of the fact that cocaine is commonly packaged in foil packets and that Aqueduct Race Track had its share of illicit drug trafficking. Moreover, since Officer Natale had made prior drug arrests in the stairwell where defendant was apprehended, it can be inferred that he was aware that this isolated location was well suited for covert exchanges of illegal drugs. Additionally, Officer Natale knew defendant's companion had been suspected of drug trafficking and was the target of an ongoing drug investigation. Thus, we are not presented with a case involving the mere passing of a foil packet.

Although Officer Natale saw no money exchanged between defendant and his companion, this fact is not determinative (see *People v Crowley,* 98 AD2d 628; *People v Strik,* 96 AD2d 1107; *People v Roman,* 96 AD2d 953). Nor were the behavior and circumstances described in *People v McRay* (*supra,* pp 601-602 [money exchanged, participants exhibit evasive or furtive behavior, exchange occurs in an area rampant with narcotics activity]) as sufficing to establish probable cause when observed in conjunction with the exchange of a glassine envelope, intended to be an exhaustive list. Here, a trained and experienced officer witnessed the defendant and his companion, a man suspected of trafficking in drugs and the target of a drug investigation, enter an isolated stairwell — the situs of previous drug transactions. These observations, when combined with the transfer of a foil packet, were sufficient to raise the level of inference from suspicion to probable cause to believe a crime was being committed. Accordingly, Criminal Term correctly denied defendant's motion to suppress the physical evidence and defendant's inculpating statement. Rubin, Boyers and Lawrence, JJ., concur.

Brown, J. P., dissents and votes to reverse the judgment, on the law and the facts, grant the motion to suppress and dismiss the indictment with the following memorandum: As pointed out by the majority, the Court of Appeals in *People v McRay* (51 NY2d 594, 604) concluded that a glassine envelope can be considered "the hallmark of an illicit drug exchange". However, under the *McRay* rule, as the majority correctly acknowledges, the mere passing of such an envelope is, in and of itself, insufficient to establish probable cause. Additional relevant behavior

or circumstances must be present to raise the level of inference from suspicion to probable cause (*People v McRay, supra,* pp 601-602; see, also, *People v Oden,* 36 NY2d 382, 385; cf. *People v Bittner,* 97 AD2d 33). The *McRay* court, in its opinion, outlined various circumstances which, when coupled with the exchange of a glassine envelope, might give rise to a finding of probable cause. For example, the passage of money in exchange for the envelope might establish probable cause. Evidence of furtive or evasive behavior on the part of the participants in the transaction might similarly be sufficient to justify a finding of probable cause since it is suggestive of consciousness of guilt. And further, if an exchange occurred in an area rampant with narcotics activity, an inference of probable cause might be drawn.

Although I agree that the passage of a tinfoil packet can be considered a "telltale sign" of an illicit drug exchange, in the instant case the officers had little beyond the transfer of the packet to justify their arrest of defendant. Officer Natale did not see any money exchanged between defendant and his companion (cf. *People v Crowley,* 98 AD2d 628; *People v Strik,* 96 AD2d 1107; *People v Roman,* 96 AD2d 953). There was no furtive or evasive behavior on the part of the participants in the transaction such as an attempt to dispose of the contraband. While it was claimed that defendant moved his head slightly to the left or right, such conduct was equivocal at best (cf. *People v Alexander,* 37 NY2d 202, 204; *People v Alston,* 84 AD2d 737). And finally, the area where the arrest was effectuated was not an area rampant with narcotics activity. Officer Natale testified that he had made a total of only 30 to 40 drug arrests during his entire five and one-half years with the New York Racing Association. He acknowledged that not all of the arrests were made at Aqueduct. And only five of the arrests involved sale or possession of cocaine. This testimony, although that of a qualified observer, was insufficient to justify the conclusion that Aqueduct Race Track or, for that matter, the stairwell where the arrest occurred, was an area rampant with narcotics activity. The arrest was based on nothing more than the officers' observation of defendant handing a tinfoil packet to another individual who was characterized by the arresting officers — without any elaboration as to the basis therefor — as the subject of an investigation involving narcotics. Under the *McRay* rule such facts do not, in my judgment, constitute probable cause to arrest the defendant. Accordingly, I conclude that the motion to suppress should have been granted.