*1001 OPINION OF THE COURT
Richard C. Failla, J.
I. PROCEDURAL HISTORY
On December 4, 1985, a hearing was held before Judicial Hearing Officer Maurice Grey to determine whether certain physical evidence should be suppressed as the fruit of an illegal arrest. One witness was called at the hearing: arresting Officer Carmen Chiclana. Officer Chiclana’s testimony was found to be credible, sub silentio, by the Judicial Hearing Officer. However, Judicial Hearing Officer Grey recommended suppression of the evidence based upon his findings that the facts as alleged were insufficient to find that the officer had probable cause to arrest the defendant, Samuel Garcia.
A transcript of the hearing, along with memoranda of law, were sent to me for my review and adoption, rejection or modification of the Judicial Hearing Officer’s recommendation (CPL 255.20). Based upon the following findings of fact and conclusions of law, the motion to suppress is denied.
II. FINDINGS OF FACT
At the time of the defendant’s arrest, Officer Chiclana had been assigned to the 28th Precinct for almost six months. Prior to that, she had been assigned to the 43rd Precinct. At the 28th Precinct, Officer Chiclana was part of a special unit specifically designed to clean up areas within the city which were known for heavy concentrations of illegal street drug transactions. This law enforcement effort was known by the code name "Operation Pressure Point.”
Relative to her assignment to this special unit, Officer Chiclana had taken classes which included training in the various ways different street drugs are packaged for sale. Officers involved in Operation Pressure Point were assigned by their supervisors to areas believed to be the focal points of illicit drug transactions. Since her assignment to the 28th Precinct, Officer Chiclana has made three or four other drug-related arrests at the same general location where the defendant Garcia was arrested.
On August 21, 1985, at approximately 11:10 p.m., Police Officer Chiclana was on foot patrol in a "drug prone” area walking north on Lenox Avenue. When she reached the corner of 122nd Street and Lenox Avenue, she noticed two *1002 men leaning upon a mailbox examining what appeared to be a small glass vial. Her law enforcement curiosity piqued, Officer Chiclana approached the men from behind. From her new vantage point (approximately five feet from the suspects), Officer Chiclana observed the two men inspecting a small clear vial containing a white substance which she believed to be cocaine. This observation was made with the aid of the light provided by the overhead streetlamp which the defendant and his companion were apparently using to examine the contents of the vial.
The officer, who was in full uniform, then interrupted the men and informed them that they were in possession of a controlled substance and were under arrest. Because she was alone at the time, the officer called for a back-up unit. Having but one set of handcuffs in her possession, Officer Chiclana decided to handcuff the taller of the two men. Samuel Garcia, the smaller man and the sole defendant in this case, remained with his hands free but nevertheless under arrest. While awaiting the arrival of the back-up unit, Mr. Garcia began walking away until he was reminded by Officer Chiclana that he too was under arrest and was not free to leave. Officer Chiclana’s command was then reiterated by another officer in a patrol car which had just arrived at the scene as a result of Officer Chiclana’s request for assistance.
In response to both police officers, Mr. Garcia began to walk back towards the arrest site. Mr. Garcia then imprudently decided to move his hand towards his back, pocket. Reacting immediately to a potentially life-threatening situation, Officer Chiclana told Garcia not to touch himself and proceeded to place her hand into Garcia’s back pocket, feeling what she believed to be a metal trigger guard of a small flat pistol. Because Officer Chiclana had never made a gun arrest before, she asked one of the back-up officers to disarm Garcia in order to avoid accidentally shooting the defendant while removing the gun from the back pocket of the defendant’s tight-fitting jeans. The other officer, who was standing behind the defendant, then pulled out a brass knuckles/knife from Garcia’s pocket. It is this weapon that is the subject of the defendant’s motion to suppress.
III. CONCLUSIONS OF LAW
The first issue to be decided by this court is the level of intrusiveness of Officer Chiclana’s actions. The facts indicate *1003 that Officer Chiclana reasonably believed that the defendant, after attempting to walk slowly away from the police following his arrest, was reaching into his back pocket to take out a weapon. At this juncture, the police officer had the right to stop and frisk the defendant whether or not the original seizure was properly based upon probable cause.
Officer Chiclana’s testimony clearly indicates that she had an articulable reason to believe that the defendant was armed and that she might be in danger. Applying the logic used by the Court of Appeals in People v Boodle (47 NY2d 398, cert denied 444 US 969 [1979]) and People v Townes (41 NY2d 97 [1976]), the arrest, if illegal, was sufficiently attenuated to permit the officer to frisk the defendant. (Cf. Terry v Ohio, 392 US 1 [1968].) However, Officer Chiclana’s actions were inconsistent with a mere frisk insofar as she chose not to "pat-down” the defendant’s outergarments, but placed her hand within his back pocket. The court must now determine the legal significance of the officer’s deviation from a standard frisk.
In Camara v Municipal Ct. (387 US 523 [1967]), the Supreme Court declared that the protections guaranteed by the 4th Amendment’s proscription against unreasonable searches and seizures must be applied by "balancing the need to search [or seize] against the invasion which the search [or seizure] entails.” (Supra, at p 537; see also, Terry v Ohio, supra, at p 21; People v De Bour, 40 NY2d 210 [1976].) The United States Supreme Court has long held a frisk to be a highly intrusive form of police conduct. To justify a frisk, a law enforcement agent must be able to point to "specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant that intrusion.” (Terry v Ohio, supra, at p 21; see also, People v Mack, 26 NY2d 311, cert denied 400 US 960 [1970]; People v Grant, 83 AD2d 277 [2d Dept 1981], where the court held that an officer who cannot point to articulable facts justifying his being in fear of his life may nonetheless frisk a suspect if it is reasonable under the totality of the circumstances.) Once a frisk has been performed, a police officer may reach inside the suspect’s outer-garments if and only if he has felt an object he reasonably believes to be a weapon. (See, People v Prochilo, 41 NY2d 759, 763 [1977].) These strict safeguards indicate that the State and Federal judiciaries regard a frisk as a severe intrusion of privacy. Even the slightest deviation from a simple "pat- *1004 down” would therefore raise the level of this encroachment to a full search.
When Officer Chiclana chose to put her hand inside the pocket instead of simply patting Mr. Garcia on the outside of his garments, this variance caused her to cross the line which separates a frisk from a search. Officer Chiclana’s search of the defendant can therefore only be found proper if it was made incident to a lawful arrest.
The facts established at the hearing indicate that Officer Chiclana saw the defendant and another person examining a vial containing a white substance. She was only five feet away from the two men and they, unaware of her presence, were holding this vial under a streetlamp on a public street and in plain view. This occurred in a location designated under Operation Pressure Point as an area frequently used for the illicit street sales of drugs.
Under present case law, had the two men been examining a glassine envelope filled with white powder under similar conditions, the police officer would have been legally justified to arrest and search both suspects. "If in the past the glassine envelope was a 'telltale sign of heroin’, it can now be deemed the hallmark of an illicit drug exchange.” (People v McRay, 51 NY2d 594, 604 [1980]; see also, People v Eldridge, 103 AD2d 470 [1st Dept 1984], applying the McRay holding to cases where no currency was exchanged.) Whether this rule should be extended to cases involving small glass vials is one of apparent first impression and is the solitary factor to be determined in deciding whether the arrest was valid. This court finds that the rule should be so extended.
Viewing a glassine envelope may or may not be sufficient in and of itself to establish probable cause. Even though the McRay court stated (supra, at p 602), "[a]rguably, the street exchange of a glassine envelope alone would provide the requisite level of certainty”, the court listed a series of additional factors to be considered: (1) was the arresting officer experienced and trained in the methods used by criminals in the buying, selling, and use of illegal narcotics; (2) was the area in which the defendant was found notorious for narcotics activity; or (3) were there any other factors indicating that a crime had just been, was being, or was about to be committed?
Officer Chiclana testified that she had been specifically trained for narcotics enforcement. Neither this court nor the Judicial Hearing Officer has found this officer to be an expert *1005 in the use and sale of controlled substances. However, the McRay court did not require arresting officers to be experts. An arresting officer must merely be experienced and trained. The various methods of packaging drugs for illicit street sales are not so numerous or hard to recognize so as to require years of training or involvement in hundreds of drug arrests. This is particularly true when the method of packaging is a small glass vial. Such vials are easily recognized and are not commonly seen on the streets of New York City in the course of innocent behavior.
Officer Chiclana saw the two men in possession of a vial containing white powder and she immediately informed the two men that they were in possession of a controlled substance and were under arrest. When taken in conjunction with her testimony that she attended classes at the precinct designed to teach her how drugs are packaged and sold, there is sufficient evidence to find that Officer Chiclana reasonably believed that a small glass vial containing white powder was evidence of the crime of possession of a controlled substance. (See, People v Balas, 104 AD2d 1039, 1040 [2d Dept 1984], where the Appellate Division, Second Department, stated that "a foil packet in which cocaine is commonly packaged is certainly analogous to the glassine envelope in McRay”.)
The next step in applying the McRay holding is to assess the neighborhood in which the crime took place. Officer Chiclana testified that she was assigned to "Operation Pressure Point.” Like the antidrug campaign in McRay, this operation was specifically designed to stem the ever-rising tide of drug-related crimes in neighborhoods infested with narcotics sales. The fact that Officer Chiclana was assigned this post as part of her duties involved with Operation Pressure Point is sufficient to find that this area was notorious for the exchange and sale of illegal narcotics.
In People v Eldridge (103 AD2d 470, supra), the Appellate Division, First Department, clearly eliminated any requirement that currency must be exchanged for an arrest to be valid where the piobable cause arises out of the possession of a glassine envelope. It would be retrogressive for this court to apply a standard to small glass vials which is no longer applicable in cases involving glassine envelopes.
Given the facts of this case, the court can find no legal distinction between a small glass vial and a glassine envelope. The court finds the logic applied in the Balas decision (supra), *1006 which found tinfoil packets to be analogous to glassine envelopes, to be compelling and now holds that a small glass vial is analogous to a glassine envelope.
This court does not operate in a vacuum and cannot ignore the increase of cases coming before it and other courts involving defendants possessing or selling drugs packaged in small glass vials. As different methods are adopted by illicit drug dealers to package and sell their different wares, the court must be willing to adapt and apply the law to attain society’s legitimate goal to reduce the proliferation and detrimental impact of illegal drug sales while being ever vigilant in safeguarding the constitutional protections afforded us all.
In view of the foregoing, I find that Officer Chiclana acted properly when she approached, observed, and arrested the defendant. She observed conduct inconsistent with lawful behavior and acted swiftly and prudently. "Probable cause requires, not proof beyond a reasonable doubt or evidence sufficient to warrant a conviction * * * but merely information which would lead a reasonable person who possesses the same expertise as the officer to conclude, under the circumstances, that a crime is being or was committed”. (People v McRay, 51 NY2d 594, 602, supra; People v Crowley, 98 AD2d 628, 629 [1st Dept 1983].)
Officer Chiclana’s arrest was properly based upon probable cause. Accordingly there is no question as to the propriety of the search of the defendant’s person as incident to a lawful arrest. The brass knuckles/knife was within the defendant’s grabbable area and, in view of the fact that he was not handcuffed at the time and placed his hand in the proximity of his back pocket, the search is constitutionally permissible under Chimel v California (395 US 752, reh denied 396 US 869 [1969]).
The People’s motion requesting this court not to adopt the Judicial Hearing Officer’s findings is granted. The defense motion to suppress physical evidence is denied.