OPINION OF THE COURT
Bruce Allen, J.
This case presents a troublesome issue: can there be probable cause to arrest a suspected drug seller when the police officer does not actually see the vials of crack which he believes are being exchanged? Based on the particular facts and circumstances of this case, I find that probable cause exists.
The facts are straightforward and may be stated simply. Officer Michael Brummet, the sole witness at the suppression hearing, was highly experienced in narcotics work. Prior to this case he had made approximately 100 arrests, 40 to 50 of which involved drug offenses.
On December 6, 1988, at approximately 5:10 p.m., Officer *561 Brummet and his partners were patrolling in an unmarked van. As they approached 277 West 127th Street, a location known for drug dealing, the officer observed the defendant standing with a small group of people. The street was dimly lit. When the van was about 5 to 7 feet away, the officer saw the defendant hand "something” to a woman who, in turn, handed "something” to the defendant. Their suspicions aroused, the officers drove around the block. Officer Brummet and one partner got out of the van and took a position which gave them an unobstructed view of the defendant at a distance of 25 to 30 feet.
Approximately one minute later, a man approached the defendant. Using binoculars, Officer Brummet saw him give money to the defendant. The defendant then reached into his right jacket pocket, took a "small item” out in his closed fist, and "slid” it into the other man’s hand. After receiving the object, the man left.
Moments later, another man approached the defendant, spoke briefly to him, and gave him money. Again, the defendant reached into his right jacket pocket, pulled out "something”, and passed it to the man in a "clenched” fist.
At that point Officer Brummet sent a radio message containing defendant’s description to the officers who had remained in the van. Officer Brummet and his partner pursued the last suspected buyer, but they soon lost sight of him. They returned to find the defendant being detained by the other officers. A search of the defendant’s right jacket pocket revealed one vial of crack. This vial must be suppressed if the foregoing facts do not establish probable cause.
The test for determining the existence of probable cause is deceptively simple: an officer must have a reasonable belief that a crime is being committed. (See, Henry v United States, 361 US 98, 102 [1959].) But what is a reasonable belief? Not surprisingly, disagreements have arisen from time to time. (See, e.g., People v Moore, 62 AD2d 155 [1st Dept 1978], revd 47 NY2d 911 [1979].) For the most part, however, this open-ended standard has been highly successful because it has allowed the courts to make each determination upon a flexible admixture of common sense, legal precedent, and the ever-changing criminal scene.
The evolving aspect of the standard is clearly illustrated in the on-the-street drug cases. Initially, the courts were uncertain as to the significance of an exchange of glassine enve *562 lopes. Although drug sellers used glassines to hold small quantities of heroin, glassines also were associated with innocent activities like stamp collecting. (Compare, People v Russell, 34 NY2d 261 [1974], with People v Oden, 36 NY2d 382 [1975].) As the drug epidemic spread, however, the sight of glassines in transit took on more sinister overtones. Finally, in the leading case of People v McRay (51 NY2d 594 [1980]), the Court of Appeals settled the matter by holding that the mere passing of a glassine constituted probable cause. In the words of Chief Judge Cooke, the glassine had become "the hallmark of an illicit drug exchange.” (51 NY2d, at 604, supra.)
Today, nine years after McRay (supra), heroin has taken a back seat to cocaine. The drug of choice now is "crack”, a solid form of cocaine which is sold in clear plastic vials. Approximately one inch long and one eighth of an inch wide, a crack vial is roughly the size of a glassine envelope. So plentiful are these vials that they have become synonymous with glassines in determining if a drug offense is in progress. (See, e.g., People v Bridgewater, NYLJ, May 1, 1989, at 27, col 4; People v Garcia, 131 Misc 2d 1000 [Crim Ct, NY County 1986].) Before the ascendance of crack, the small tinfoil packets used to sell powdered cocaine also had achieved the same notorious status. (See, People v Balas, 104 AD2d 1039, 1040 [2d Dept 1984].)
As the popularity of crack has grown, the police have intensified their efforts to enforce the law. By the same token, the street sellers and buyers have developed means to prevent their arrests. Since the vials are so small, sellers often hide them in their palms when passing them to the buyers. And while a buyer may examine the vial at the time of the purchase, it is more common for the buyer to continue the concealment until he can make his inspection in private. The typical "buy”, therefore, is exactly what happened here: a rapid-fire, wordless exchange of an unseen object for money.
To observe such a transaction only once leaves some room for doubt. It is possible that a debt is being repaid or a loan is being made. Yet when the exact same furtive movements are repeated again and again in a drug-prone location, any lingering doubts disappear. As a police officer who had witnessed countless drug transactions, Officer Brummet had no difficulty in assessing the situation after seeing three identical exchanges despite the fact that he did not actually see the vials. Indeed, given the proliferation of drug sellers in our neighborhoods, most New Yorkers quickly would have recognized that the defendant was selling drugs.
*563 To be sure, police officers have instituted sophisticated methods in making drug arrests to ensure that a conviction will follow. Here, Officer Brummet did not have the advantage of working with a specially trained narcotics team, using "buy” money and undercover agents. While the team arrests make sense from an economic point of view, it does not mean no other arrests are possible.
After all, the police make nondrug arrests every day based on circumstantial evidence which is arguably no stronger than the evidence present here. For instance, in gambling cases an officer typically arrests an alleged bookmaker after observing slips of paper nearby and a line of alleged bettors at the ubiquitous plexiglass window. Another example is the so-called "car case” in which an officer arrests a person upon seeing him use a coathanger to unlock a parked car. In each of these scenarios the conduct may be quite innocuous but there is a very strong likelihood, based upon reasonable inferences, that the defendant is engaged in criminal activity. Officer Brummet’s observations, too, led inexorably to the same conclusion.
Although the Court of Appeals has not had occasion to consider whether probable cause may exist without the observation of glassines or vials, two post-McRay decisions from the Second Department suggest that case law is moving in that direction.
In People v Bittner (97 AD2d 33 [2d Dept 1983]) the defendant twice passed an unseen object to a person in exchange for money. The purchaser then held up the object to his nose and smelled it. This sniffing indicated to the officer that the drug in question was phencyclidine. The court found that probable cause existed, given the totality of the circumstances: a drug-prone location, the exchange of money, the fact that two identical transactions had occurred within a short period of time, and the sniffing. Apart from the sniffing, which does not take place in a crack sale, the facts here are almost identical.
Subsequently, in People v Brown (124 AD2d 592 [2d Dept], lv denied 69 NY2d 744 [1987]), the same court upheld another arrest based on testimony that the officer had seen what appeared to be a passing of two white envelopes. Once again, the transaction took place in a drug-prone location and there were three other exchanges of currency for unseen objects. Brown, too, is similar to the case at hand since the "appeared to be” testimony added little to the prosecution’s case.
*564 On the other hand, in People v Mills (145 AD2d 578 [2d Dept 1988], lv denied 73 NY2d 924 [1989]) a divided panel was unwilling to find probable cause when an officer saw "something” exchanged which he could not identify as a narcotic. Mills is not controlling here, however, because only one exchange was observed. As indicated, one exchange, standing alone, can be ambiguous.
There is also a recent lower court case to be discussed. In People v Munoz (NYLJ, Apr. 24, 1989, at 24, col 4), an officer received complaints that drugs were being sold at a bodega. The officer went there and observed the defendant at the entrance, accepting money from various individuals and escorting them inside. A codefendant behind a counter then passed something to the individuals. Citing Mills (supra), the court held that the officer did not have probable cause to arrest. I respectfully disagree. Given the complaints plus the officer’s confirmatory observations, the probability that the defendants were selling drugs in Munoz was at least as strong as it was in this case.
The day will come when drug dealers no longer haunt our streets, just as surely as the day when glassine envelopes and plastic vials once again bring to mind the noncriminal uses for which they were originally intended. Until that time, however, the courts need not ignore how these brazen criminals operate. With or without the sighting of vials, repeated exchanges of money for "something” in a drug-infested location constitutes probable cause to arrest.
The motion to suppress is denied.