OPINION OF THE COURT
Felice K. Shea, J.
An indictment has been filed against defendants Wakeem Way and Derek Yancy charging them with criminal possession of a controlled substance in the second degree (Penal Law § 220.18), criminal possession of a controlled substance in the third degree (Penal Law § 220.16) and criminally using drug paraphernalia in the second degree (Penal Law § 220.50). Defendants move for an order suppressing vials, plastic bags containing cocaine, and an aluminum foil packet containing cocaine, on the ground that the physical evidence was obtained by the police in violation of their right to be free from illegal search and seizure.
Defendants have the burden of proof on a motion to suppress physical evidence. The People have the burden of *823 going forward to show the legality of the police conduct in the first instance. (People v Di Stefano, 38 NY2d 640.)
At a pretrial suppression hearing on February 28, 1990, the People called Port Authority Police Officer Bruce Kent; defendants called no witnesses on their behalf. The testimony of Officer Kent was credible and free of substantial inconsistencies.
FINDINGS OF FACT
At 7:00 p.m. on Saturday,[1] September 16, 1989, Port Authority Police Officer Bruce Kent, a participant in hundreds of drug arrests in and around Lincoln Tunnel, was patrolling in uniform in a marked car when he came to a gridlocked intersection at Galvin Place and 40th Street. The area was well lit and there was still daylight. Officer Kent exited his vehicle and, standing in front of the line of cars facing west toward the Lincoln Tunnel, he directed cars out of the intersection by making eye contact with drivers and gesturing with his hands. Officer Kent tried to make eye contact with the driver of a white Nissan automobile 15 feet in front of him but defendant Yancy, seated in the driver’s seat next to defendant Way, ignored the officer and kept his eyes straight ahead. As a precaution, Officer Kent walked around the Nissan and came up to it from the rear to tell the driver to move out of the intersection. The officer looked through the side window of the car as he approached and saw, in his own words, "a bag of vials”. An open brown paper bag, 13 inches high, was on the back seat. Visible at the top of the bag, but not protruding, were numerous empty one-inch vials commonly used to hold crack cocaine. The vials were standing in shallow open boxes, each less than an inch deep, 50 to 100 vials per box, packaged in a way Officer Ken often had seen vials of crack prepared for transportation and sale. Officer Kent, recognizing the vials to be drug paraphernalia, radioed for backup assistance. He instructed defendant Yancy to pull the Nissan over to the curb, told him he was being stopped for blocking the intersection and, in fact, later ticketed him for a violation of Vehicle and Traffic Law § 1175. The officer asked defendant Yancy for the automobile registration, his operator’s license and proof of insurance. Officer Kent asked the defendants, "Where are you coming from?” and defendant *824 Yancy answered, "From the deuce”, which Officer Kent knew to be street language for 42nd Street. Officer Kent heard on his portable radio that a police backup car was nearby, and he then said to defendant Yancy, "What’s in the bag?” Defendant Yancy answered "Bottles”, which is a street word for vials in which crack is packaged. A second officer pulled up to the scene and the police removed defendants from their car, handcuffed them and seated them at the curb.
After the defendants were under arrest the officers searched the vehicle, preparing to impound it, and found an "Alf” doll, heavy at its bottom with yellow paper napkins, often used to wrap crack cocaine, coming out of the back pocket. The officers lifted the pocket flap, secured by velcro, and withdrew from the stuffed animal’s pocket two yellow paper napkins, one wrapped around a plastic bag containing white powder and the other wrapped around two plastic bags containing white powder. The police also recovered an aluminum foil packet containing white powder. The brown paper bag, when examined, was found to have in it 450 empty jumbo vials packaged in light cardboard trays and 5 packages containing 498 caps.
CONCLUSIONS OF LAW
When defendant Yancy avoided looking at Officer Kent while he was directing traffic, the officer had a right to approach the defendants’ Nissan from the rear to direct it out of the gridlocked intersection. As Officer Kent walked toward the driver, he was entitled to see the open brown paper bag of vials in plain sight on the back seat of the vehicle. (People v Brosnan, 32 NY2d 254, 257.) His inquiries were also proper. (People v De Bour, 40 NY2d 210, 213.)
With the advent of widespread traffic in cocaine, small clear glass or plastic vials containing crack have become readily recognizable to the police, and New York case law reflects life in the street. "The clear plastic vial [containing cocaine] is, like the small glassine envelope, the 'hallmark of an illicit drug exchange’ (People v McRay, 51 NY2d 594, 604)”. (People v Goggans, 155 AD2d 689, 690; see also, People v Small, 144 Misc 2d 560, 562; People v Garcia, 131 Misc 2d 1000, 1004-1006; People v Bridgewater, NYLJ, May 1, 1989, at 27, col 4 [Sup Ct, Queens County].) A less familiar problem is the question posed here: What police action is justified by an officer’s observation of empty vials?
*825 Defendants argue that possession of small empty bottles or vials is not illegal and thus does not connote criminal activity. Defendants concede that vials are frequently used for packaging crack cocaine, but argue that without additional suspicious circumstances, not present here, there is no indication of criminal activity.
The People contend that glass vials are the well-known indicia of an unlawful drug transaction, and that in any case, when taken together with defendants’ furtive behavior, the drug-prone location in which the observation was made and defendants’ statements, probable cause existed to arrest defendants for criminally using drug paraphernalia in the second degree.
Penal Law § 220.50 provides, in pertinent part:
"A person is guilty of criminally using drug paraphernalia in the second degree when he knowingly possesses * * *
"2. Gelatine capsules, glassine envelopes or any other material suitable for the packaging of individual quantities of narcotic drugs or stimulants under circumstances evincing an intent to use, or under circumstances evincing knowledge that some person intends to use, the same for the purpose of unlawfully manufacturing, packaging or dispensing of any narcotic drug or stimulant.”
It would appear that the Legislature, in enacting Penal Law § 220.50, intended to permit prosecution of "factory” cases where narcotics might not be possessed at the time of arrest but where they are manufactured and packaged for distribution or sale. (See, People v Shelton, 136 Misc 2d 644, 649; Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 220.50, at 77; June 2, 1971 letter to the Governor from Executive Assistant to Dist Attorney of NY County supporting act creating statute, on file in the NY State Sup Ct Criminal Branch Lib, 1st Judicial Dist.) Nonetheless, Penal Law § 220.50 is not limited to raids on drug "factories” and a number of authorities have permitted charges to stand of criminally using drug paraphernalia where the paraphernalia was found in an automobile. (See, e.g., People v Gonzalez, 115 AD2d 73, affd 68 NY2d 950; People v Henriquez, 150 AD2d 227; People v Madera, 125 AD2d 238; People v Martinez, 136 Misc 2d 665.)
Since drug paraphernalia may have legitimate uses, possession of multiuse items such as vials is not a crime. The statute requires, in addition to possession, "a culpable mental *826 state which * * * precludes the possibility of innocent possession of the paraphernalia.” (Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 220.50, at 77.) Here, the record demonstrates probable cause to believe defendants possessed the vials with intent to use, or with knowledge that the vials were intended by others for use, in the unlawful manufacturing, packaging or dispensing of a narcotic drug.
A large number of vials of a kind commonly used for packaging and distributing crack is "material suitable for the packaging of individual quantities of narcotic drugs” as defined in Penal Law § 220.50 (2). Although Officer Kent could not see the entire contents of the bag, he saw many vials near the top and reasonably suspected that more were underneath. His suspicions were confirmed when defendant Yancy, in answer to the question, "What’s in the bag?”, responded, "Bottles”, a street word for vials. As each vial is small, Officer Kent could conclude that the bag contained a sizable quantity of vials.
The large number of vials also signified that defendants contemplated a commercial rather than a personal use for the vials. On a Saturday night, at 7:00 p.m. in a location known for drug traffic, the large number of vials strongly suggested an "inten[t] * * * to use * * * [the vials] for the purpose of unlawfully manufacturing, packaging or dispensing” crack cocaine as proscribed by Penal Law § 220.50 (2). (See, People v Grande, 45 NY2d 717, 719 [police observation of cartons and half cases of cigarettes supported arrest for possession with intent to sell untaxed cigarettes]; People v Vailes, 150 AD2d 406, 407 [intent to sell can be inferred from possession of 48 bags of marihuana and 21 packets of cocaine]; People v Timmons, 127 AD2d 806 [possession of 119 packages containing cocaine legally sufficient basis for finding defendant intended to sell]; see also, People v Hernandez, 71 NY2d 233, 245; cf., People v Garren, 158 AD2d 614 [2d Dept] [mere presence of a single empty vial in an automobile provided neither probable cause to arrest the occupants nor justification to search the vehicle]; People v Mason, 136 Misc 2d 968 [possession of six glass vials and one glass pipe, apparently intended for personal use, not criminal use of drug paraphernalia].)
The manner in which the small glass vials were packaged was an additional indicia of criminal intent. There was credible testimony that drug dealers commonly assemble small *827 glass vials in shallow paper containers such as those Officer Kent saw in the paper bag.
Other factors which fueled the suspicions of the experienced law enforcement official were defendant Yancy’s furtive avoidance of eye contact with him, the heavy drug traffic in and around Lincoln Tunnel, defendant Yancy’s use of street slang to report that defendants were coming from "the deuce” (a known drug selling location) with a bag full of "bottles”, and the unlikelihood of a legitimate, personal or business use for the vials under all the circumstances.
Defendants maintain that possession of empty vials is susceptible of innocent interpretation since they can be used for storage of laboratory specimens, jewelry parts, perfume or incense. Defendants cite People v Savona (112 AD2d 328 [mere presence of bullet cartridge on back seat of car did not justify extensive vehicle search]), and People v Baldon (51 AD2d 880 [mere presence of "Zig Zag” cigarette rolling papers on car floor did not justify search of car]; see also, People v Kramer, 132 AD2d 572). However, in those cases the items seen were not contraband in and of themselves, but at most an indication to the police to be alert for other signs of criminality. Here, the vials were contraband if possessed for a criminal purpose. Moreover, in Savona, Baldon and Kramer, no supplemental suspicious circumstances were present.
Defendants rely also on People v Gonzalez (115 AD2d 73, 83, affd 68 NY2d 950, supra) where the First Department, in dictum, states that possession of empty glassine envelopes which could be used for stamp and coin collecting is not a predicate for a warrantless search. In Gonzalez, the glassine envelopes were not in plain view and the question of what circumstances, in addition to possession, would furnish probable cause to arrest under Penal Law § 220.50 was not addressed. The holding of Gonzalez is not inconsistent with a finding of probable cause herein.
It was not necessary for the police to rule out the possibility that defendants were perfume salesmen or had other legitimate uses for the empty vials. Nor need the People present a quantum of evidence at a suppression hearing that would support a conviction at trial. (Hoffa v United States, 385 US 293, 310; People v McRay, 51 NY2d 594, 602; People v Ragusa, 112 AD2d 956, 957.) On September 16, 1989 Officer Kent was aware of a number of facts before he arrested defendants which, taken together, gave rise to a reasonable belief that the crime of criminally using drug paraphernalia *828 in the second degree had been committed by defendants.[2] Once defendants were arrested lawfully, Officer Kent was entitled to seize and examine the "Alf ’ doll as part of an inventory search (People v Gonzalez, 62 NY2d 386; People v Pleban, 108 AD2d 880), and to recover the contraband in the stuffed animal.
Accordingly, defendants’ motion to suppress physical evidence is denied.
[Portions of opinion omitted for purposes of publication.]

. The court takes judicial notice that September 16, 1989 was a Saturday.

. It is not legally significant that Officer Kent called for backup assistance and may have decided to arrest defendants before he had probable cause. It is also immaterial that the officer asked defendant Yancy for his driver’s license and automobile documents in an effort to gain time. If defendants’ constitutional rights were not violated and if probable cause existed at the time of arrest, there was no police impropriety. The probable cause test is an objective one. (Terry v Ohio, 392 US 1, 21-22; LaPave, Searches & Seizures, 566-567 [2d ed 1987].)