■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALBERT AMOATENG, Appellant.—Judgment of the Supreme Court, Bronx County (Fred W. Eggert, J.), rendered on June 5, 1986, convicting defendant, upon his plea of guilty, of criminal sale of a controlled substance in the second degree and sentencing him to an indeterminate term of imprisonment of from three years to life, is unanimously affirmed.

On April 15, 1985, defendant Albert Amoateng and two other persons were arrested in an automobile in a Bronx County parking lot after selling drugs to an undercover police officer. Following defendant's subsequent indictment for criminal sale of a controlled substance in the first degree, criminal possession of a controlled substance in the second degree and criminally using drug paraphernalia in the second degree, a *Mapp* hearing was conducted for the purpose of determining,

among other matters, the existence of probable cause to arrest defendant. In that regard, the People produced a single witness, Detective Marino DiChristina, a 13-year veteran of the New York City Police Department who testified to his involvement in an ongoing investigation surrounding the Kentucky Fried Chicken outlet located on Gun Hill Road in The Bronx. On the date in question, he was assigned as a backup for an undercover police officer. During a meeting that morning, the officers had decided that if a "buy" occurred, the undercover officer would signal by removing his hat and wiping his brow. Accordingly, Detective DiChristina proceeded to the address in question and parked directly across from the store.

When Detective DiChristina first arrived at the scene, the undercover officer was inside the Kentucky Fried Chicken store. He thereafter observed the undercover officer, dressed in a Kentucky Fried Chicken uniform, walk out of the store into the parking lot in the company of a man later identified as defendant herein. He also saw defendant and the undercover officer approach a car which defendant entered. Detective DiChristina noted that the undercover officer leaned against the window of the vehicle and talked to one of the occupants. The undercover officer then took off his hat and wiped his brow, and Detective DiChristina and the rest of the team moved in and arrested the three people inside the car, as well as the undercover officer. An ensuing search of the vehicle revealed the presence of narcotics and money.

At the conclusion of the hearing, the prosecutor, citing *People v Petralia* (62 NY2d 47), argued that the People had met their burden of establishing probable cause for the arrest of defendant and the search of his automobile. The court, however, agreed with defense counsel's contention that that case was distinguishable from the instant situation since the undercover in *People v Petralia (supra)* had provided an exact description of the seller plus additional details, whereas the undercover officer herein had indicated only that he had made a "buy" and gave no information or description of who was to be arrested. In the view of the hearing court, the record was inadequate to determine whether or not there was probable cause, but, declining to grant defendant's motion to suppress, the court continued the hearing until a later specified date at which time the People would produce the undercover officer. After the continued hearing had taken place, at which the undercover officer testified, the court denied the motion to suppress.

In the opinion of this court, the evidence presented by the

People at the initial session of the hearing provided sufficient probable cause to support the arrest of defendant and the search of his vehicle, and, therefore, it is unnecessary to reach any other issues raised by defendant. The prearranged signal, whose meaning was well understood by both the undercover officer and Detective DiChristina, was passed from the former to the latter, thereby conveying the personal knowledge of the sender to the recipient. As the Court of Appeals declared in *People v Petralia (supra,* at 51-52), "the arrest was not based on information from an unknown source of unknown unreliability. The evidence submitted to the court by the arresting officer shows that he relied on information from another officer on the narcotics team who had personally witnessed the defendant commit the crime just prior to the radio transmission. This testimony by one of the officers involved in the operation would, if credited, establish probable cause for the arrest and there was no need for the People to also produce the undercover officer to support a finding of probable cause by the court" *(see also, People v Mingo,* 121 AD2d 307). Moreover, the undercover officer gave the signal as he was standing beside defendant's vehicle, which was occupied by defendant and the two men arrested with him. There was, thus, no uncertainty concerning the identity of the individuals participating in the drug transaction, and the motion to suppress should have been denied without requiring the appearance of the undercover officer. Concur—Sandler, J. P., Milonas, Kassal, Ellerin and Wallach, JJ.