■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SIXTO MATIENZO, Appellant.—Judgment, Supreme Court, New York County (Harold J. Rothwax, J., at suppression hearing; Alfred H. Kleiman, J., at jury trial and sentence), rendered June 13, 1990, convicting defendant of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree (Penal Law § 220.16 [1]; § 220.09 [1]), and sentencing him, as a predicate felony offender, to concurrent terms of imprisonment of from four and one-half to nine years and from three to six years, respectively, is affirmed.

The primary issue raised on appeal is whether the prosecution met its burden at the suppression hearing to establish that probable cause existed for defendant's arrest. Defendant urges, and our dissenting colleague agrees, that it was error for the hearing court to have refused to require that the observing officer testify. In the circumstances presented, we conclude otherwise and, accordingly, affirm.

It is well established that an officer is entitled to assume the reliability of, and to act upon, the strength of a fellow officer's transmitted report, for "[i]n such circumstances the sender's knowledge is imputed to the receiver and, when the receiver acts, he presumptively possesses the requisite probable cause" (People v Lypka, 36 NY2d 210, 213). Such a presumption may be rebutted at the suppression hearing, however, if the prose-

cution cannot demonstrate that the sender himself possessed the requisite probable cause to act. This burden may be met without calling the sender where, as here, "[t]he evidence submitted to the court by the arresting officer shows that he relied on information from another officer on the narcotics team who had personally witnessed the defendant commit the crime just prior to the radio transmission" *(People v Petralia,* 62 NY2d 47, 51-52, *cert denied* 469 US 852).

Defendant contends that this was not established, since the observing officer described a "hand-to-hand" in his transmission, and subsequently testified in the grand jury that he saw defendant give another person a "small package" in exchange for currency. This claim is without merit.

First, the testifying officer stated that he was familiar with the transmitting officer's voice and, further, that the term "hand-to-hand" is used specifically to refer to an exchange of narcotics for currency. The arresting/testifying officer had made approximately 200 narcotics arrests, 90 of which were the result of information supplied by the transmitting officer in similar drug operations. This was sufficient to establish the requisite probable cause which would entitle the receiver to make the arrest *(see, People v Acevedo,* 179 AD2d 465; *People v Amoateng,* 141 AD2d 398).

Nor does defendant's claim that the transmitting officer described a "small package" in the grand jury warrant a finding of no probable cause. First, the focus of the grand jury proceedings was different from that of the suppression hearing, and did not require that all of the observations preceding the radio transmission be described *(see, People v Oakley,* 28 NY2d 309, 312-313). In addition, it is not a mere exchange involving currency that establishes probable cause, but all of the circumstances attending the exchange *(see, People v McRay,* 51 NY2d 594, 602). Probable cause does not require proof beyond a reasonable doubt or evidence sufficient to warrant a conviction, "but merely information which would lead a reasonable person who possesses the same expertise as the officer to conclude, under the circumstances, that a crime is being or was committed". *(Supra,* at 602.)

For these reasons, defendant's argument that the prosecution failed to meet its initial burden of establishing the legality of the arrest, must be rejected.

Our examination of this record leads us to further conclude that defendant's discarding of a crack-filled bag behind the counter of a delicatessen he entered was not a spontaneous

reaction to the police approach *(see, People v Boodle,* 47 NY2d 398, 404, *cert denied* 444 US 969), but an independent calculated act *(see, People v Wilkerson,* 64 NY2d 749).

The trial court properly denied defendant's request for a jury charge on the lesser included offense of criminal possession of a controlled substance in the seventh degree, as there was no reasonable view of the evidence that would support a conclusion that defendant committed the lesser, but not the greater, offenses *(see, People v Glover,* 57 NY2d 61).

We find no abuse of discretion by the trial court in limiting the cross-examination of police witnesses with respect to extrinsic matters *(see, People v Rodriguez,* 161 AD2d 255), or in instructing the jury to refrain from speculation and improper inference *(see, People v Hernandez,* 143 AD2d 842, 844).

We have considered defendant's additional arguments and find them to be without merit. Concur—Ellerin, J. P., Asch and Kassal, JJ.

Smith, J., dissents in a memorandum as follows: The motion court erred when it (1) refused to permit the defense attorney to speak with or call to testify at the suppression hearing the police officer whose observation allegedly established probable cause, (2) refused to require the People to call that officer, and (3) incorporated part of the grand jury testimony of the officer who allegedly witnessed a sale into its findings.

The sole witness at the hearing on the motion to suppress narcotics was Police Officer James Shea. He testified as follows: Around 7:00 P.M. on October 12, 1989, he and his partner were on radio motor patrol on 47th Street between Ninth and Tenth Avenues in Manhattan. While Officer Shea testified on direct examination that he had received a message from Officer Carney of a narcotics transaction, Officer Shea further testified on cross examination that Officer Carney told him only that there had been "a hand to hand" by two males. One man, the defendant, who was the alleged seller, was described. The officers proceeded to Tenth Avenue and went northbound where they saw the individual described walking towards them. As the officers exited their car, Officer Carney made another broadcast that this was the man. Officer Shea approached the defendant and told him to stop. The defendant quickened his pace and entered a delicatessen. There the defendant reached into his right jacket pocket, took out a brown paper bag and threw it over the counter. Officer Shea recovered the bag, which contained one hundred vials of crack, while his partner, Officer Fitzgerald, prevented the

defendant from escaping. The defendant was arrested and identified by Officer Carney.

After the testimony of Officer Shea, defendant sought to speak with Officer Carney and to put him on the stand. The prosecutor objected and the court refused to permit the defense attorney either to speak with Officer Carney or to call him. The defense sought to establish that Officer Carney had not seen "a narcotics exchange" or what was exchanged between defendant and the other man who was not apprehended.

At a suppression hearing, the People have the burden of going forward to show the legality of police conduct (People v Chipp, 75 NY2d 327, 335 [1990], cert denied 498 US 833, [1990]). The police may establish probable cause in a "buy and bust" operation by the testimony of the arresting officer alone without calling the observing officer (People v Petralia, 62 NY2d 47 [1984], cert denied 469 US 852 [1984]). Where an issue of probable cause is raised by the arresting officer's testimony, however, the observing officer should be called (People v Petralia, 62 NY2d, supra, at 53). Here, the arresting officer did not establish probable cause by his statement that Officer Carney referred only to a "hand to hand." Moreover, Officer Carney's grand jury testimony, improperly used as evidence in the suppression hearing, did not establish an exchange of money and narcotics. Officer Carney testified in the grand jury to seeing "a small package" exchanged for money. In this case the People simply failed to present sufficient proof to establish the legality of police conduct.