■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v EDWARD SHAW, Respondent. [596 NYS2d 832] —Order, Supreme Court, New York County (Michael Corriero, J.), entered April 6, 1992, which granted defendant's motion to suppress physical evidence seized in connection with his arrest, reversed, on the law, the motion to suppress denied, and the case remanded for further proceedings on the indictment.

The arresting officer, Gary Black, a five-year veteran of the Port Authority Police with over 100 drug-related arrests, observed defendant at midday engaging in four separate transactions over a 10-minute period, at a location known for illegal drug activity, across Eighth Avenue from the bus terminal entrance. In the course of that surveillance, defendant was observed reaching into a crumpled white paper bag and delivering objects extracted therefrom to other persons in exchange for U.S. currency. Each transaction took about thirty seconds, and the participants were described by Officer Black as furtive and nervous. As Black, accompanied by other officers, attempted to approach one of the buyers to investi-

gate further, the buyer fled the scene, a circumstance escalating Black's reasonable suspicion of criminal activity to the level of probable cause necessary to justify an arrest. ("Probable cause generally requires a reasonable belief on the part of the police that a particular individual or individuals have committed a crime or are about to do so. There must be more than a mere suspicion." *[People v Esposito,* 37 NY2d 156, 160.]) Defendant was arrested, and his bag was found to contain 32 vials of crack cocaine.

Properly analyzed, the cases cited in the dissent either are clearly distinguishable, or support the legitimacy of the police action here. For example, in *People v Wilson* (175 AD2d 15, *lv denied* 78 NY2d 1015), we rejected the People's similar theory only because it had never been raised in the lower court. But in doing so, we cited *(supra,* at 17) the three factors determining probable cause for arrest which the Court of Appeals had pronounced in *People v McRay* (51 NY2d 594), viz., observation of telltale signs of drug activity, high incidence of narcotic trafficking in the area, and the training and experience of the police officer. Each of those factors was proven here. Concededly, the "telltale sign" of drug activity in *McRay* was the passing of a glassine envelope. But the jurisprudence in this Fourth Amendment area has moved beyond such niceties as distinctions based on the color or degree of opacity of the envelope *(see, e.g., People v Small,* 144 Misc 2d 560, 562). As the *McRay* Court noted *(supra,* at 604):

"To begin with the most obvious, if money is passed in exchange for the envelope, probable cause almost surely would exist [citations omitted]. Exchange of currency negates *all but the most implausible* explanations for the transaction, and thus conveys more than sufficient indicia of a drug sale to warrant an arrest. Similarly, additional evidence of furtive or evasive behavior on the part of the participants suffices to establish probable cause [citations omitted]. Such evidence, suggesting consciousness of guilt, has traditionally been considered some proof of a crime [citations omitted].

"Beyond these situations, if the exchange occurs in an area rampant with narcotics activity, and is proven by competent evidence such as testimony of a qualified observer, an inference of probable cause may properly be drawn." (Emphasis added.)

We reject the notion that the activities observed by Officer Black constituted innocuous behavior susceptible to innocent interpretation *(cf., People v De Bour,* 40 NY2d 210, 216). In fact, we find it a daunting challenge to offer *any* explanation,

even *implausible,* which might innocently account for the actions observed.

*Matter of Kevin W.* (188 AD2d 301) stands merely for the proposition that observation of purported drug transactions in a drug-prone neighborhood, absent some additional element of evidence, may be insufficient to sustain an arrest and detention. But here, with several indicia already giving rise to reasonable suspicion that defendant was in the act of committing a crime, there was the additional element of flight of one of the parties to a transaction, and flight is "an important factor in determining probable cause" to arrest *(People v Howard,* 50 NY2d 583, 592, *cert denied* 449 US 1023).

In *People v Matienzo* (184 AD2d 296, *affd* 81 NY2d 778), our finding of probable cause was based upon an arresting officer's receipt by radio transmission of his fellow officer's observation of a single suspected sale of contraband. (The Court of Appeals, affirming the establishment of probable cause on an alternate ground, specifically declined to reach our rationale for finding probable cause.) The circumstances of the case now before us, involving an experienced officer's direct observation of four separate transactions over a short period of time, in an area known for illicit drug activity, together with the flight of a buyer, are even more compelling in support of probable cause. It is this combination of circumstances, susceptible to no innocent interpretation, which raises this case to a level of probable cause that justified defendant's arrest *(see, People v Quarles,* 187 AD2d 200), clearly transcending mere reasonable suspicion which would warrant only further inquiry. There is nothing in the *De Bour* trilogy *(supra)* which requires a rung-by-rung escalation of police conduct when the situation, as here, clearly warrants otherwise.

The test for probable cause to arrest requires simply a belief, prudently arrived at by the arresting officer, that a crime has been committed by this defendant *(see, Henry v United States,* 361 US 98, 102). The combination of elements here amply established probable cause for a lawful arrest. The motion to suppress should have been denied. Concur—Wallach, Asch, Kassal and Rubin, JJ.

Carro, J. P., dissents in a memorandum as follows: Evidence was given at the suppression hearing that the arresting officer observed defendant on four occasions over a ten-minute period remove a white paper bag from his jacket pocket, from which he extracted something that he then handed over to four successive persons in exchange for cash, and that defendant

was thereupon arrested without any inquiry having been made of him by the officer. The observed conduct, while providing reasonable suspicion sufficient to justify a stop and inquiry, and pursuit of the defendant if he had fled, did not provide probable cause for defendant's arrest *(cf., People v Leung,* 68 NY2d 734; *see, People v Wilson,* 175 AD2d 15, *lv denied* 78 NY2d 1015; *Matter of Kevin W.,* 188 AD2d 301).

In *People v Matienzo* (184 AD2d 296, *affd* 81 NY2d 778), this Court found probable cause resulting from a police officer's receipt of a police radio transmission that defendant had engaged in a "hand-to-hand", referring to defendant's exchange of a small plastic bag for money. The Court of Appeals in its affirming memorandum did not reach the issue dividing our Court in that case, which was whether probable cause for the defendant's arrest could be established without calling the transmitting officer at the suppression hearing, but rather affirmed on the alternative rationale of the motion court, that the police radio report of defendant's conduct, and his ignoring of the police request to stop, furnished reasonable *suspicion* that he had committed or was about to commit a crime such that pursuit by the officers was justified. As in *People v Martinez* (80 NY2d 444), it was the police discovery of crack in the bag that the defendant abandoned which supplied probable cause for the defendant's arrest.

In *People v Wilson* (175 AD2d 15, *lv denied* 78 NY2d 1015, *supra)* we did not reject, solely on procedural grounds, any theory which might validate the arrest here, as the majority suggests. We simply refused to address the People's contention, raised for the first time on appeal, that the defendant's motion to suppress should have been denied because the initial seizure of defendant was permissible under *Terry v Ohio* (392 US 1) as a stop and frisk (175 AD2d, *supra,* at 16). That issue is not presented on this appeal. The general principle reiterated in *Wilson,* and controlling here, is this: "A police officer's observation of an exchange between defendant and another individual of an undescribed object and United States currency is insufficient to establish probable cause to arrest defendant [citations omitted]." *(Supra,* at 17.) In *Wilson,* as here, the defendant was observed to have engaged in more than one suspected sale; yet we held that because the officer's observations "were susceptible to innocent interpretation, his immediate arrest of defendant was excessive and not based on probable cause [citation omitted]." *(Supra,* at 17-18.) Similarly, in *Matter of Kevin W.* (188 AD2d, *supra,* at 302) we held: "Thus, we agree with Family Court's finding that the officers'

observations of respondent passing undescribed objects to three persons [in exchange for currency] did not permit them to assume that the objects contained an illegal substance. While such observations were sufficient to justify a request for information *(People v De Bour,* 40 NY2d 210, 223), they did not provide a basis for a forcible detention *(supra)."*

The majority suggests no adequate basis for not following our recent unanimous holdings in *People v Wilson (supra)* and *Matter of Kevin W. (supra)* under the principle of stare decisis. Nor does the majority cite any appellate cases holding that where unseen or unidentified objects were exchanged on the street for currency, a police officer had probable cause to arrest a suspect without making an inquiry, which is a crucial element absent in the instant case. Thus, if Officer Black had merely inquired of the defendant for an explanation of his suspicious conduct and received an implausible explanation, that would have elevated the officer's reasonable suspicion that defendant was committing a crime, to probable cause justifying the defendant's arrest.

The Court of Appeals in *People v McRay* (51 NY2d 594, 604) repeatedly emphasized the importance of an observation of a *glassine envelope* being exchanged for currency as a circumstance which "may give rise to a finding of probable cause". Indeed, the Court noted that whereas "in the past the glassine envelope was a 'telltale sign of heroin', it can now be deemed the hallmark of an illicit drug exchange." *(Supra,* at 604.) The Court continued its analysis with the following observations, which further support my conclusion that there was not probable cause to arrest the defendant for exchanging "something" for currency *(supra,* at 605): "Quite simply, then, there is no sound basis for resisting as a matter of law the inference of probable cause that arises when as in these cases a trained and experienced officer observes the delivery of one or more glassine envelopes—the 'hallmark' of a drug transaction—in an area notorious for narcotics activity. This is not to say that the inference of probable cause must be drawn in every case. Rather, we are merely establishing a minimum requirement. Once the minimum is satisfied, it is a question for those courts with fact-finding power—principally the suppression court and the Appellate Divisions—to find as a fact whether probable cause exists."

The majority apparently dismisses as unimportant the officer's failure to observe the object passed, whether it be a glassine envelope or a crack vial, which was the central element cited by the Court of Appeals as a *minimum require-*

*ment* for finding probable cause. In my view, such a bold departure from this clear standard emanating from our State's highest court, is unjustifiable.