■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MANUEL CARMONA, Respondent. [617 NYS2d 20] —Order of the Supreme Court, New York County (Frederic S. Berman, J.), entered September 11, 1992, which suppressed physical evidence and a statement, and dismissed the indictment, is reversed, on the law and facts, the motion for suppression is denied, and the indictment reinstated, and the matter remanded for further proceedings.

Officer Susan Murray testified that she and other officers from her unit, including Officer Richard Regan, took part in a drug operation where Officer Regan was "in an observation post", and "we're the stash car, the backup team". She testified as to her extensive narcotics training and at least 250 cocaine related arrests. She had previously worked with Officer Regan in similar drug operations "at least 20 times, 25 times". She testified that she received a radio transmission from Officer Regan that a Hispanic male fitting defendant's description "was selling crack, and the crack was stashed in the base of a street light" on the "southeast corner, 107th Street and Amsterdam Avenue". Officer Murray went to that

location where, still guided by Officer Regan on the radio, she placed defendant under arrest and recovered "one brown paper bag containing three plastic bags of alleged crack from the base of the street light. Officer Regan told me it was there."

Officer Regan was assigned to a narcotics observation post on a rooftop at the northwest corner of 107th Street and Amsterdam Avenues. He testified that he saw "numerous", which was defined as "more than two or three" unapprehended persons approach defendant who was standing in front of 174 West 107th Street, diagonally across the street on the southeast corner. In each instance, defendant would speak to the person, accept money, go to the base of a street light "right off 171 West 107th Street" which was across the street, pick up a brown paper bag, and give the person a small opaque plastic bag taken from the brown paper bag. "After these transactions occurred, [defendant] would go back to the street light and put the bag back down on the ground".

We find that Criminal Term erred when it suppressed the money and drugs recovered and also the statements made by the defendant. An exchange of money for a glassine envelope or other recognizable drug package creates probable cause to arrest *(People v McRay,* 51 NY2d 594). Thus, the Court of Appeals in *McRay* noted:

"If in the past the glassine envelope was a 'telltale sign of heroin', it can now be deemed the hallmark of an illicit drug exchange.

"It is against this background that this court should outline certain circumstances which, when combined with the exchange of a glassine envelope, may give rise to a finding of probable cause. To begin with the most obvious, if money is passed in exchange for the envelope, probable cause almost surely would exist * * *. Exchange of currency negates all but the most implausible explanations for the transaction, and thus conveys more than sufficient indicia of a drug sale to warrant an arrest. Similarly, additional evidence of furtive or evasive behavior on the part of the participants suffices to establish probable cause * * *. Such evidence, suggesting consciousness of guilt, has traditionally been considered some proof of a crime." *(Supra,* at 604.)

Here, Officer Regan testified that defendant had conversations with a number of people. Defendant received money from each of these individuals after a short conversation. Again, in each of these "transactions" defendant went across

the street to a brown paper bag hidden at the base of the streetlight and extracted "a small plastic bag" which he brought back across the street and handed to the waiting customer. Thus, not only was there an exchange of money for a glassine envelope, i.e., "a small plastic bag", in as many as three separate transactions, but the defendant went across the street to a hiding place in the base of a streetlight to get the plastic bags for each transaction, "additional evidence of furtive or evasive behavior" which "suffices to establish probable cause" *(supra,* at 604).

The defendant echoes the suppression court in citing several factors such as the lack of testimony as to the observing officer's experience and as to whether this was a drug-prone location. However, the backup officer, Murray, was called by the People to establish a prima facie case of probable cause for the arrest. Once Officer Murray testified as to the radio call from the observing officer detailing the sale of cocaine by the defendant, the People had met their burden of going forward to show the legality of the arrest. The testimony of the observing officer, Regan, was elicited by the defendant when Officer Regan was called as the defendant's witness. It is not surprising, under these circumstances, that Officer Regan's background and experience were not explored. In any event, Officer Murray, the backup officer, testified as to her extensive training and experience with over 250 drug arrests. She also testified as to Officer Regan's drug related experience noting that Regan had worked with her on previous drug observations "at least 20 times, 25 times". In addition, the fact that the police set up a narcotics observation post at this corner supports the reasonable inference that this was an area rampant with narcotics activity. "The locale was so rampant with drugs as to be one of the targets of a special police operation." *(People v McRay,* 51 NY2d, *supra,* at 606.) Further, *McRay* makes it clear that the exchange of money is a much more important factor in establishing probable cause for arrest than evidence of a drug-prone location and the officer's experience, which would become relevant in the absence of an exchange of money *(supra,* at 604). Concur—Sullivan, J. P., Kupferman, Asch and Williams, JJ.

Tom, J., dissents in a memorandum as follows: I respectfully dissent and would affirm the IAS Court's order granting suppression.

From a rooftop observation post, Police Officer Richard Regan observed "more than two or three" individuals approach defendant in front of 174 West 107th Street in Man-

hattan. On each occasion, defendant would receive currency from the individual and would subsequently walk approximately 12 to 15 feet away and retrieve a brown paper bag from the base of a lamppost. Defendant would then remove a small plastic bag from the paper bag and hand it over to the individual. Officer Regan radioed his backup officer, gave her defendant's description and informed her that defendant was selling crack at that location, with the crack "stashed" in the base of a street light.

The backup officer went to the location in issue and immediately arrested defendant without any inquiry. After the arrest the officer reached into the base of the lamppost, through a little door, and recovered a brown paper bag which contained plastic bags of crack.

At the suppression hearing, the People only called the arresting officer to testify. The defendant called Officer Regan as a defense witness but no questions were asked as to whether the area of the arrest was a drug-prone location, or whether he had any specialized experience and training in narcotics. There was no testimony given that Officer Regan recognized the plastic bags as a known type of drug packaging. The People did not cross-examine Officer Regan.

In *People v McRay* (51 NY2d 594, 605), the Court of Appeals concluded that:

"Quite simply, then, there is no sound basis for resisting as a matter of law the inference of probable cause that arises when as in these cases a trained and experienced officer observes the delivery of one or more glassine envelopes—the 'hallmark' of a drug transaction—in an area notorious for narcotics activity. This is not to say that the inference of probable cause must be drawn in every case. Rather, *we are merely establishing a minimum requirement. Once the minimum is satisfied, it is a question for those courts with fact-finding power * * * to find as a fact whether probable cause exists.*" (Emphasis added.)

Applying the foregoing principles set forth in *McRay*, I find that under the facts and circumstances of this case, the People have failed to establish the minimum requirements necessary to show probable cause for defendant's arrest. Therefore, the granting of suppression of the narcotics is warranted.

It is well recognized that a glassine envelope or other recognized drug package, being a " 'telltale sign of heroin' ", if exchanged for money, would almost surely create the inference of probable cause for an arrest *(People v McRay, supra,* at 604).

On this issue, the People's case is flawed since there were no glassine envelopes observed and no testimony offered that the small plastic bags exchanged by defendant were recognized as a known type of drug packaging which can be deemed a hallmark of an illicit drug exchange. Contrary to the majority's finding, a small opaque plastic bag cannot be summarily classified as a glassine envelope *(see,* Webster's Third New International Dictionary [14th ed 1963], which defines glassine as "a thin * * * transparent or semi-transparent paper"). Officer Regan testified that all he could identify were small opaque plastic bags changing hands without further amplification. There was explicit unrebutted testimony from Officer Regan that he did not know the contents of the plastic bags. The People, by way of rehabilitation, could have elicited, on cross-examination, testimony from the officer that, based on his experience and the type of drug packaging, it was his opinion that the plastic bags contained crack. The People chose not to question Officer Regan. In conclusion, it appears that Officer Regan did not see or recognize the item sold by defendant.

In *People v Shaw* (193 AD2d 390, *lv denied* 82 NY2d 759), we held that a series of four exchanges of unidentified objects extracted from a white paper bag for money, observed by an experienced officer in a drug-prone location, created reasonable suspicion of criminality, which was elevated to probable cause when one of the buyers fled from the approaching police *(see also, Matter of Kevin W.,* 188 AD2d 301).

In the present case, while defendant's conduct raised reasonable suspicion of criminality, there was no flight from the approaching officer to elevate defendant's conduct to probable cause. Defendant was found by the arresting officer talking on a pay phone and was immediately arrested without incident.

The People have also failed to prove any additional relevant behavior or circumstances necessary to raise the level of inference from suspicion to probable cause. Once defendant challenges the validity of a warrantless arrest, the presumption of probable cause disappears and the burden is upon the People to establish that the officer imparting the information, in fact, possessed the probable cause to act *(People v Rosario,* 78 NY2d 583, *cert denied* 502 US 1109).

As stated in *McRay (supra),* the reasonableness of the police officer's conduct in any situation will depend on the totality of the circumstances with which he is confronted, including the known character of the area involved.

Here, no evidence was offered as to the nature of the area in issue nor the observing officer's experience or training in narcotics. The testimony of the arresting officer, that she previously worked with Officer Regan "at least 20 times", in similar operations, without any elaboration whatsoever as to what Officer Regan's role in those operations was, simply does not, in my view, establish Officer Regan as an experienced narcotics officer or that he had any specialized training in narcotics investigation.

The burden is upon the People to submit competent proof, and not indirect and inconclusive information for the court's speculation, to establish the element of probable cause. The IAS Court was within its province to disregard such inconclusive proof. The Court of Appeals in *McRay (supra)* has set forth minimum requirements to establish probable cause and any deviation from such requirements would create a different standard as laid down by the Court.

The majority found that the "stash" of narcotics in the base of a lamppost was " 'additional evidence of furtive or evasive behavior' " which " 'suffices to establish probable cause' ". However, the *McRay* Court went on to state that similar evidence "has traditionally been considered *some* proof of a crime" *(supra,* at 604; emphasis added).

In the present case, in view of the fact that the observing officer failed to identify the object exchanged by defendant coupled with the People's failure to show that the area is a drug-prone location as well as the lack of testimony concerning the officer's experience, I would conclude that the "stash" of illegal drugs under the facts and circumstances of this case was insufficient to establish probable cause.

The defendants in *People v Matienzo* (81 NY2d 778) and *People v Shaw (supra)* were observed, in a location known for illegal drug activity, retrieving objects from a paper bag and exchanging them with other persons for U.S. currency. The objects which turned out to be vials of crack cocaine were stored and hidden in a separate paper bag. In *Shaw,* the defendant stored the crack in a crumpled white bag. The Court in both cases held that defendant's conduct only reached the level of reasonable suspicion.

In view of the foregoing testimony, as well as the relevant case law, I can only conclude that the People possessed a reasonable suspicion to justify a stop and inquiry *(People v De Bour,* 40 NY2d 210, 223; *Matter of Kevin W., supra,* at 302), but not, at that juncture, probable cause to make an arrest.