[626 NYS2d 95]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID GRAHAM, Appellant.

First Department, May 2, 1995

**APPEARANCES OF COUNSEL**

*A. Hirsch* of counsel *(Winston McIntosh* on the brief; *Philip L. Weinstein,* attorney), for appellant.

*Karen J. Jason* of counsel *(Sylvia Wertheimer, Jonathan J. Faust* and *Joel L. Rubinstein* with her on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J. P.

This appeal presents the issue of whether the observation by an experienced police officer, in a "drug-prone" location, of five separate transactions in each of which defendant exchanged money for a small object he removed from a brown paper bag and thereafter placed the bag on the ground next to a fence about 10 feet away, gives rise to probable cause.

The following facts were testified to at the suppression hearing, at which the People presented the only witness. On April 23, 1992, shortly before 2:00 P.M., Police Officers Smith and McDonald, uniformed and on foot patrol in the Lincoln Projects, stationed themselves in the lobby of a building directly across the street from 2101 Madison Avenue, a playground and a drug-infested area. Smith, a police officer for over five and one-half years and assigned to patrolling the Lincoln Projects for over four years, had personally made 50 narcotics-related arrests involving crack cocaine in the area around 2101 Madison Avenue and had assisted in over 100 more such arrests. On that particular day, bright, sunny and providing Officer Smith with a clear, unobstructed view of the area between the two buildings, the playground was littered with empty crack vials.

At about 1:55 P.M., Smith, using binoculars, observed a man approach defendant, who was sitting on a bench in the playground area in front of 2101 Madison Avenue. Defendant got up and the two men met between the bench and a fence. The

man handed money to defendant, who reached into a brown paper bag he was holding, took out a small object and handed it to the man who, at that point, walked off. Defendant then took the brown paper bag, placed it on the ground next to a fence about 10 feet away and sat back down on the bench.

A few minutes later, at approximately 1:59 P.M., Smith observed two other men approach defendant, who got up and retrieved the brown paper bag. The first man handed money to defendant, who reached into the bag, removed something from the bag and, while concealing the object in his cupped hand, handed it to the first man, who left. Defendant engaged in the same transaction with the second man, at the conclusion of which he again placed the brown paper bag on the ground near the fence before returning to the bench. Approximately two minutes later, at 2:01 P.M., two women approached defendant, who got up from the bench and retrieved the brown paper bag. The first woman handed money to defendant, who then reached into the bag, removed a small object and handed it to her; she then walked off. The second woman engaged in the same transaction with defendant, who once again placed the bag on the ground next to the fence and returned to the bench where he had been sitting.

Although Smith could, through the binoculars, observe money being exchanged in each of these transactions, he could not see what was being taken out of the brown bag and given in return. Asked to explain why, Smith, who believed that the objects were less than an inch in length, stated: "A vial is very small. It was kind of cupped. It was a fast transaction".

After observing the fifth transaction, Smith and McDonald left their observation post and walked across to where defendant was seated. McDonald approached defendant while Smith walked over to the bag, picked it up and, looking inside, saw six vials of what he knew from experience was crack cocaine. At Smith's direction, McDonald then arrested defendant.

Finding the testifying police officer credible and "an experienced officer trained in narcotics investigation in evaluating his observation", the hearing court found that Officer Smith had good reason to believe, given that the "stash" was kept not on defendant's person but was "secrete[d] * * * within reasonably close distance", that what he saw was not an "innocent transaction". Accordingly, the court, citing *People v McRay* (51 NY2d 594), denied suppression.

Preliminarily, we note that while the People contest defen-

dant's standing to challenge the search of the bag, they did not raise the issue either in their papers opposing suppression or at the hearing itself. Thus, the issue is not preserved for appellate review as a matter of law. *(People v Stith,* 69 NY2d 313, 320.)

The thrust of defendant's argument on appeal is that Officer Smith's observations of defendant as he exchanged unidentified objects for money in a drug-infested area, in the absence of other significant factors, are insufficient to establish probable cause. The standard for probable cause justifying a search or seizure is not the same as that required to establish guilt. "Probable cause does not require proof to a mathematical certainty, or proof beyond a reasonable doubt." *(People v Mercado,* 68 NY2d 874, 877, *cert denied* 479 US 1095.)* Probable cause is defined as the body of information available to a police officer "which would lead a reasonable person who possesses the same expertise as the officer to conclude, under the circumstances, that a crime is being or was committed." *(People v McRay,* 51 NY2d, *supra,* at 602.) Since the Fourth Amendment's commands are "practical and not abstract", they must be interpreted "in a commonsense and realistic fashion." *(United States v Ventresca,* 380 US 102, 108.)

Clearly, if Officer Smith had observed vials, glassine envelopes, tinfoil packets or any other type of package commonly associated with a drug transaction, probable cause would have existed. *(See, e.g., People v McRay,* 51 NY2d, *supra,* at 606 [glassine envelopes]; *Matter of James P.,* 194 AD2d 467, *lv denied* 82 NY2d 659 [vial]; *People v Balas,* 104 AD2d 1039, 1040 [tinfoil packet].) But the observation of a drug package is not a *sine qua non* for the existence of probable cause in a drug sale. *(See, e.g., People v Shaw,* 193 AD2d 390, *lv denied* 82 NY2d 853 ["objects" extracted from a bag and exchanged for money]; *People v Owens,* 155 AD2d 696, 697 ["object(s)" were passed through a missing windowpane in the front door of an apartment building in exchange for money]; *People v Bittner,* 97 AD2d 33, 37 [unidentified object exchanged].)

In a probable cause analysis, the emphasis should not be narrowly focused on a recognizable drug package or any other single factor, but on an evaluation of the totality of circumstances, which takes into account the "realities of everyday life unfolding before a trained officer who has to confront, on a

daily basis, similar incidents" *(People v Cabot,* 88 AD2d 556, 557).[1]

As this Court noted in *People v Shaw* (193 AD2d, *supra,* at 391), the jurisprudence in this area "has moved beyond such niceties as distinctions based on the color or degree of opacity of the envelope" to the point where the visual identification of the object exchanged for money is merely one element in the totality of circumstances to be considered in any probable cause assessment. Since street-level drug sales typically involve small, easily concealable packages, utilization of a totality of the circumstances analysis is both reasonable and necessary. Street sellers of narcotics should not enjoy an immunity from arrest or search merely because they are able to conceal their wares during the exchange; concealment is itself a common characteristic of illegal conduct.

In *People v McRay* (51 NY2d, *supra,* at 604) the Court of Appeals identified certain factors which, when combined with the passing of a glassine envelope, may give rise to a finding of probable cause. The Court initially pointed to the exchange of money, noting, "To begin with the most obvious, if money is passed in exchange for the envelope, probable cause almost surely would exist [citations omitted]. Exchange of currency negates all but the most implausible explanations for the transaction, and thus conveys more than sufficient indicia of a drug sale to warrant an arrest" (51 NY2d, *supra,* at 604). The Court also noted that "additional evidence of furtive or evasive behavior on the part of the participants suffices to establish probable cause [citations omitted]. Such evidence, suggesting consciousness of guilt, has traditionally been considered some proof of a crime [citations omitted]." *(Supra,* at 604.) In addition, the Court indicated that among the other factors to be considered were the police officer's experience and whether the area involved is a "drug-prone" location. *(Supra,* at 601.)

*McRay* was decided in 1980, at the time of a "heroin

---

1. In *Matter of Shermaine J.* (208 AD2d 158), an experienced police officer in a drug-prone location observed two identical transactions in which a person approached defendant, who walked over to a garage entrance, remained there for a few seconds and then returned to the person with an "item" in his hand which he exchanged for cash. This Court concluded that those circumstances gave rise to reasonable suspicion, which was elevated to probable cause by additional facts not present here. The transactions involved in the two cases are not comparable. In any event, since in *Matter of Shermaine J.* probable cause was found to exist on a consideration of all of the circumstances, the Court's conclusion that the observations of the two transactions only gave rise to reasonable suspicion was dictum.

epidemic" *(supra,* at 603). The drug trade is still flourishing, but it is the sale and use of crack cocaine which has now reached epidemic proportions. *(See, People v Harmon,* 181 AD2d 34.)* The passing of a glassine envelope is no longer the only hallmark of the street corner transaction. The passing of vials of crack cocaine—objects too small to be identified except at very close range—is equally if not the more prominent characteristic of a drug sale in today's marketplace. *(See, e.g., People v Shaw, supra; People v Gonzalez,* 198 AD2d 431, *lv denied* 82 NY2d 925; *People v Matos,* 195 AD2d 287, *lv denied* 82 NY2d 756).* But the other factors identified in *McRay* are still relevant to an assessment of probable cause.

In the instant case, any person observing defendant and his five customers and his method of operation, using good common sense, would have, in the totality of circumstances, concluded that defendant was involved in the sale of narcotics. From a succession of customers, defendant received cash in exchange for an object less than an inch in length, which he removed from a brown paper bag. While defendant had been holding the bag before the first transaction, after the first exchange, he placed the bag on the ground next to a nearby fence before returning to the bench on which he had been sitting some 10 feet away. In each subsequent transaction, Smith observed defendant go over to the fence, retrieve the bag, remove a small object which he gave to the customer in exchange for cash, return the bag to the ground near the fence and then walk back to the bench. By placing his bag near the fence, retrieving it only to remove small objects that he concealed in his cupped palm, exchanging them for cash and then replacing the bag in the same place near the fence, defendant was obviously distancing himself from the contents of the bag and taking caution to conceal whatever he was selling. This is hardly the type of behavior engaged in by legitimate street vendors, who advertise their wares openly. Defendant's behavior is typical of a drug dealer plying his trade in a known drug location. The use of a stash has been held to constitute furtive behavior indicative of drug dealing. *(See, People v Carmona,* 208 AD2d 369; *see also, People v McLeod,* 202 AD2d 232, *lv denied* 83 NY2d 969.)

Moreover, of course, any person with Officer Smith's expertise, which included participation in over 150 cocaine-related arrests in the very area where these transactions occurred, an area which, on the day in question, was littered with empty crack vials, would have unhesitatingly so concluded. Considerable deference was due his conclusion that he was observing

drug transactions. *(See, People v Balas,* 104 AD2d, *supra,* at 1040-1041.)

While the observation of one such transaction under these circumstances might leave room for doubt, the observation of the same exchange repeated five times within a matter of minutes removed any such doubt. In each, while Officer Smith could not observe the object exchanged, he could tell that it was less than an inch in length—consistent with the length of a vial. Moreover, the purposeful concealment of the objects exchanged in the palm of defendant's hand, as Smith observed, was consistent with the conduct of a low-level street seller.

In sum, considering the totality of the circumstances, we are of the view that any experienced police officer, confronted with what Officer Smith, an experienced officer, particularly with respect to narcotics activity in the location in question, witnessed, would reasonably have concluded that what he had observed were five drug sales from a brown bag which defendant used as a stash. The officer's observations and assessment of defendant's actions in the circumstances demonstrated probable cause to search the brown bag for drugs and to arrest defendant.[2]

Accordingly, the judgment of the Supreme Court, New York County (James Leff, J., at hearing; Edward Sheridan, J., at trial and sentence), rendered April 6, 1993, convicting defendant, after trial, of criminal possession of a controlled substance in the third degree and sentencing him, as a predicate felony offender, to an indeterminate term of imprisonment of from 5 to 10 years, should be affirmed.

ROSENBERGER, KUPFERMAN, ASCH and MAZZARELLI, JJ., concur.

Judgment, Supreme Court, New York County, rendered on or about April 6, 1993, affirmed.

---

2. As an incident to a lawful arrest, police may conduct a warrantless search of an individual and the area within that person's immediate control *(see, People v Smith,* 59 NY2d 454, 459-460 [Jasen, J., concurring]). To the extent that defendant may be arguing on appeal that the search of the bag was improper because the bag was not in his "grabbable" area, defendant did not make this argument before the hearing court and has thus failed to preserve the issue for appeal. *(See, People v Cummings,* 207 AD2d 657, *lv denied* 84 NY2d 1010.) We also note that where the arrest and the search are nearly simultaneous, that the latter preceded the former is not material. *(People v Landy,* 59 NY2d 369, 377; *People v Evans,* 43 NY2d 160, 166.)