[643 NYS2d 987]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALVIN
JONES, Appellant.

First Department, June 11, 1996

418

---

**APPEARANCES OF COUNSEL**

*William Ramos* of counsel *(Daniel L. Greenberg,* attorney), for appellant.

*Susan H. Odessky* of counsel *(Carol A. Remer-Smith* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J. P.

Pursuant to a prior order of this Court (210 AD2d 91, *lv denied* 85 NY2d 863), this appeal was held in abeyance and the matter remanded for a hearing on defendant's motion to suppress physical evidence, limited solely to the recovery of $650 in United States currency from his person. As to the drugs found nearby, we held, on our initial consideration of the matter, that defendant lacked standing to challenge their seizure.

At the hearing, Detective Hector, trained in narcotics investigation and with considerable experience in drug enforcement and whose testimony was found to be credible, testified that on November 18, 1989, at about 3:00 P.M., while acting as a backup in an unrelated "buy and bust" operation in the vicinity of 112th Street and St. Nicholas Avenue, a drug-prone location, he observed defendant and an unapprehended woman engaged in conversation. He saw the woman hand money to defendant, who, in turn, handed her something which, although the detective could not see, he believed to be a crack vial because of the way the woman held it. The woman then looked at the object defendant had given her and the two walked away from each other. Based on his experience and the way the woman held and glanced at the object defendant gave her, Detective Hector believed that he had witnessed a drug transaction.

The detective followed defendant who, after walking a short distance across the street, removed a plastic bag from his person and placed it into a stack of cinder blocks located at a construction site. Detective Hector had not seen the plastic bag

before. He then stopped defendant, handcuffed him and patted him down for weapons. By this time, another member of the backup team arrived and defendant was subjected to a full search, which uncovered the $650 that was the subject of the suppression hearing.[1]

Detective Hector left defendant with his brother officer while he pursued the suspects in the unrelated buy and bust operation. He returned within two or three minutes, retrieved the plastic bag from the cinder blocks and, upon inspection, found that it contained 62 vials of a substance which he recognized and was later confirmed to be crack cocaine. At the hearing the People conceded that at the time defendant was handcuffed, which was prior to the recovery of the plastic bag containing the crack vials, he was under arrest. Thus, as far as the seizure of the $650 is concerned, the issue before us is whether defendant's arrest was supported by probable cause. In our view, it was.

Probable cause is based on "information which would lead a reasonable person who possesses the same expertise as the officer to conclude, under the circumstances, that a crime is being or was committed [citations omitted]" (*People v McRay*, 51 NY2d 594, 602); it "does not require proof to a mathematical certainty, or proof beyond a reasonable doubt" (*People v Mercado*, 68 NY2d 874, 877, *cert denied* 479 US 1095). Moreover, "[s]ince the Fourth Amendment's commands are 'practical and not abstract', they must be interpreted 'in a commonsense and realistic fashion'." (*People v Graham*, 211 AD2d 55, 58, *lv denied* 86 NY2d 795, quoting *United States v Ventresca*, 380 US 102, 108.)

In *People v McRay* (51 NY2d 594, *supra*, at 601-602, 604), the Court of Appeals identified three factors as relevant in determining whether probable cause exists in the case of a police officer's observation of what he believes to be street-level drug dealing—the " 'telltale sign' " of illicit drug activity, a high incidence of drug trafficking in the particular area and the training and experience of the observing police officer. (*See, People v King*, 200 AD2d 487, 488, *lv denied* 83 NY2d 873.) The emphasis, of course, should be on "an evaluation of the totality of circumstances, which takes into account the 'realities of ev-

---

1. Although the People, based on the detective's earlier testimony, contend that the recovery of the $650 took place after the seizure of the plastic bag containing the drugs from the cinder blocks, the detective clarified his testimony on cross-examination. It appears that both the frisk and the search of defendant preceded the recovery of the drugs.

eryday life unfolding before a trained officer who has to confront, on a daily basis, similar incidents.' " (*People v Graham*, 211 AD2d, *supra*, at 58-59, quoting *People v Cabot*, 88 AD2d 556, 557; *see, People v McRay*, 51 NY2d, *supra*, at 605, n 5; *Matter of Shermaine J.*, 208 AD2d 158.) Probable cause should not turn, as the hearing court aptly phrased it, "on a mechanistic counting of observations."

Here, the three factors noted in *McRay* were present. As the hearing court found, Detective Hector had a "significant amount" of experience in narcotics enforcement, including his training and involvement in a large number of arrests. Indeed, he had made hundreds of narcotics arrests, including those involving cocaine, and had been trained in the identification of narcotics, the methods of packaging and the manner in which they are sold. Thus, the hearing court justifiably concluded that Detective Hector's determination that he had just witnessed a drug transaction was the reasoned judgment of a qualified, seasoned observer. (*See, e.g., People v Owens*, 155 AD2d 696, 697.)

The second *McRay* factor, i.e., the drug-prone nature of the area, was, as the hearing court found, shown by Detective Hector's testimony that defendant was observed in what appeared to the detective to be a narcotics transaction in an area rife with drug activity. As to the third *McRay* factor, the surrounding circumstances bear every "telltale" indication that defendant was selling drugs. No longer do the courts require as a prerequisite to a finding of probable cause the observation of a "hallmark" of a drug transaction, such as plastic vials, tinfoil packets or glassine envelopes. (*See, People v Graham*, 211 AD2d 55, *supra*.) As this Court recognized in *Graham*, vials of crack are "objects too small to be identified except at very close range" (*supra*, at 60). Thus, while Detective Hector did not see the object defendant passed to the unapprehended buyer, his training and experience led him to believe from the way she received the object, glanced at it and then moved away from defendant that she was a drug purchaser and that a vial had been exchanged for money.[2] The exchange of currency is, of course, a highly significant consideration in this type of an encounter. (*See, People v Shaw*, 193 AD2d 390, 391, *lv denied* 82 NY2d 759.)

---

2. While the purchaser's conduct here is more innocuous than that found relevant in other cases (*see, e.g., People v Bittner*, 97 AD2d 33, 37 [where the purchaser sniffed the object]; *People v Owens*, 155 AD2d 696, *supra* [where the purchaser placed the object in her mouth]), it is nevertheless significant when viewed in the totality of the circumstances.

Particularly significant was defendant's immediate postsale act of hiding the plastic bag in the stack of cinder blocks across the street. That defendant went out of his way to hide the plastic bag within the pile of cinder blocks, rather than merely placing it on top of the stack, could lead an experienced narcotics officer, such as Detective Hector, to conclude that defendant had just sold narcotics and was placing the balance of his inventory—his "stash"—in its hiding place. The dissent's conclusions that Detective Hector decided to arrest defendant prior to his observation of defendant's placement of the bag in the cinder blocks and, conversely, that this observation was not a factor in Hector's decision to make the arrest are unsupported by the record. Nor can such an inference be fairly drawn on any reading of Hector's testimony. Moreover, no such finding was made by the hearing court.

In any event, even if the observation of defendant's placement of the bag in the cinder blocks was not a subjective factor in Hector's decision to arrest defendant, there still would be probable cause to arrest. In determining whether probable cause exists, an "objective judicial determination of the facts in existence and known to the officer" prevails over the officer's "subjective evaluation." (*People v Lopez*, 95 AD2d 241, 246; *see also*, *Maryland v Macon*, 472 US 463, 470-471 ["Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' * * * and not on the officer's actual state of mind at the time the challenged action was taken" (quoting *Scott v United States*, 436 US 128, 136)].)

This Court, in *People v Graham* (211 AD2d 55, *supra*), as it had in earlier cases (*see, e.g., People v Carmona*, 208 AD2d 369, *lv granted* 84 NY2d 1041, *appeal dismissed* 85 NY2d 960; *People v McLeod*, 202 AD2d 232, *lv denied* 83 NY2d 969), reasoned that the use of a stash was a significant factor in concluding that, despite the observing officer's inability to identify the object exchanged for money, probable cause existed to believe that a drug transaction had occurred. (211 AD2d, *supra*, at 60.) While there were five separate transactions in *Graham* and this Court did caution that "the observation of one such transaction under these circumstances might leave room for doubt" (*supra*, at 61), it should be noted that the circumstances there differed. Unlike the furtive hiding here, the stash there, from which the defendant distanced himself, was kept in a brown paper bag in open view. In *Graham*, the ad-

ditional transactions gave meaning and substance to the officer's initial observations. Here, Detective Hector's observations of the woman purchaser's manner of holding and looking at the exchanged object and, most significantly, defendant's immediate concealment of his stash following the exchange provided meaning and substance to the transaction which led to the belief that defendant had just consummated a drug sale.

Thus, the totality of the circumstances adduced at the hearing, including Detective Hector's training and extensive narcotics enforcement experience, the drug-prone character of the area, the purchaser's manner of holding and glancing at the exchanged object and defendant's concealment of the plastic bag in near proximity immediately after the transaction, provides ample support for the conclusion that probable cause existed to arrest and search defendant.

Since none of defendant's other contentions raised on appeal have merit, the judgment of conviction should be affirmed.

Accordingly, the judgment of the Supreme Court, New York County (Frederic S. Berman, J.), rendered June 27, 1990, which, after a jury trial, convicted defendant of criminal possession of a controlled substance in the third and fourth degrees and sentenced him to concurrent indeterminate terms of imprisonment of from 6 to 12 years and 4 to 8 years, respectively, should be affirmed.

Tom, J. (dissenting). I respectfully dissent and vote to reverse the hearing court and grant suppression.

Pursuant to a prior order of this Court (210 AD2d 91, *lv denied* 85 NY2d 863), this appeal was held in abeyance and the matter remanded for a suppression hearing on defendant's motion to suppress $650 in United States currency seized from his person after his arrest. We also held that defendant failed to raise a privacy interest in certain drugs found nearby and, therefore, had no standing to seek a suppression hearing on that issue.

At the hearing, the arresting officer, Detective Steven Hector, who was experienced in narcotics identification, testified that on November 18, 1989, he observed defendant, in a drug-prone neighborhood, hand a woman an object in exchange for currency. The detective was unable to see the object but believed it to be narcotics because of the manner in which the woman held and looked at the item. Defendant thereafter walked a short distance, removed a plastic bag from somewhere on his person, which the detective had not previously observed,

placed the bag into some cinder blocks, and walked a few steps away.

Detective Hector immediately arrested defendant, handcuffed him and patted him down for weapons. Once another member of the field team arrived, Detective Hector searched defendant and recovered the $650 in question. The plastic bag was later retrieved and found to contain 62 vials of crack cocaine.

At the hearing, the People conceded that defendant was under arrest when he was handcuffed. The hearing court found, however, that probable cause existed for defendant's arrest and that the search and seizure of the money from defendant's person incident to arrest was valid. I disagree.

In *People v McRay* (51 NY2d 594, 605), the Court of Appeals held that the inference of probable cause arises when, "a trained and experienced officer observes the delivery of one or more glassine envelopes—the 'hallmark' of a drug transaction—in an area notorious for narcotics activity."

In the case at bar, the factual circumstances surrounding this single transaction observed by the officer did not raise the level of inference from suspicion to probable cause under the requirements set by *McRay*. Here, Detective Hector, who was walking across the street at the time of the alleged transaction, never observed the object defendant handed to the unapprehended woman, was unable to hear any part of their conversation, did not see any glassine envelopes, tinfoil or any other telltale sign of a narcotics transaction, and assumed he had viewed an illicit sale because of the manner in which the woman viewed the object after it was handed to her.

Under similar circumstances, the Court of Appeals has held that the fact that defendant passed a small plastic bag (*People v Matienzo*, 81 NY2d 778) or what appeared to be a "three dollar bag" (*People v Leung*, 68 NY2d 734) in a drug-prone neighborhood gave the police an objective, credible reason to approach and inquire, and that without additional furtive or evasive behavior by the participants, such transaction does not give rise to probable cause for an arrest.

In *People v Shaw* (193 AD2d 390, *lv denied* 82 NY2d 759), this Court held that a series of four exchanges of unidentified objects extracted from a white paper bag for money, observed by an experienced officer in a drug-prone location, created reasonable suspicion of criminality, which was elevated to probable cause when one of the buyers fled from the approaching police (*see also, Matter of Kevin W.*, 188 AD2d 301).

In *People v Graham* (211 AD2d 55, *lv denied* 86 NY2d 795), police officers observed defendant engage in a series of five transactions in which unidentified individuals approached defendant, who, in exchange for currency, reached into a brown paper bag, took out a small object and handed it to the individual. While this Court held that the visual identification of the object exchanged for money is merely one element in the totality of circumstances to assess probable cause, the persuasive factor in *Graham* was the succession of five separate exchanges made within a matter of minutes in a drug-infested area.

The factor that distinguishes *Graham* from this case is that the officer observed only one isolated exchange of an unidentifiable object. As this Court noted in *Graham*, "[w]hile the observation of one such transaction under these circumstances might leave room for doubt, the observation of the same exchange repeated five times within a matter of minutes removed any such doubt." (*Supra,* at 61.)

This is not a case where defendant was engaged in a series of transactions and continually traded objects from a bag for currency. Further, there was no time, and no attempt was made, to observe a method of operation (*see, e.g., People v Shaw, supra; People v Graham, supra*). Rather, this case consists of the observation of one quick exchange between defendant and an unidentified individual of an undescribed object. Indeed, the officer, unlike in *Graham*, did not even see defendant remove anything from a bag and only observed the placement of a bag into the cinder blocks a short time after the transaction occurred.

The majority, in finding probable cause, places strong emphasis on the fact that after the transaction, defendant was observed placing a plastic bag, later found to contain crack vials, in a stack of cinder blocks. However, Detective Hector had already concluded that a drug transaction had taken place based upon the "mannerisms" of the female buyer in receiving the article and glancing at it and, further, had already made a determination to arrest defendant prior to observing defendant place the bag in the cinder blocks. It is undisputed that after defendant was placed under arrest, Detective Hector went to assist in a nearby unrelated buy and bust operation before returning to the scene to retrieve the bag to ascertain its contents. Detective Hector testified that he *did not* know what the bag contained until he looked into it. The fact that the officer placed defendant under arrest without even making an attempt to ascertain the contents of the bag clearly indicates

that the decision to arrest was made immediately after the observation of a single exchange, and that defendant's placing of the bag in the cinder blocks was not a factor in the officer's assessment and determination of probable cause to arrest defendant.

Simply, where the officer's observations herein may have provided a basis for a "minimal intrusion of approaching to request information" (*People v De Bour*, 40 NY2d 210, 223), it did not rise to the level of probable cause for arrest (*People v Cedeno*, 193 AD2d 540, *lv denied* 82 NY2d 715; *Matter of Kevin W., supra; People v Wilson*, 175 AD2d 15, *lv denied* 78 NY2d 1015; *People v Washington F.*, 167 AD2d 554). Accordingly, the $650 should have been suppressed.

ROSENBERGER and Ross, JJ., concur with SULLIVAN, J. P.; TOM, J., dissents in a separate opinion.

Judgment, Supreme Court, New York County, rendered June 27, 1990, affirmed.