THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JIMMY WILLIAMS, Appellant. [893 NYS2d 130]—

Contrary to the defendant's contention, the evidence presented at the suppression hearing was sufficient to establish that a police officer had probable cause to arrest the defendant

and, therefore, the search incident to that arrest was lawful (*see People v Jones,* 90 NY2d 835, 837 [1997]; *People v McRay,* 51 NY2d 594 [1980]). The subject drug transaction occurred at approximately 9:00 P.M. in a dirt area under the Whitestone Expressway "sandwiched" between two service roads, an area the arresting officer described as a fenced-in or gated area not open to the public. The arresting officer observed that the subject area was littered with drug paraphernalia and packaging. The area was known to the narcotics enforcement unit of which the arresting officer was then a part as "Crack City." The arresting officer observed the defendant hand a small object, one-third of an inch by one-third of an inch in size, to another person in exchange for currency.

"[V]arious factors, when combined with the street exchange of a 'telltale sign' of narcotics, may give rise to probable cause that a narcotics offense has occurred. Those factors relevant to assessing probable cause include the exchange of currency; whether the particular community has a high incidence of drug trafficking; the police officer's experience and training in drug investigations; and any 'additional evidence of furtive or evasive behavior on the part of the participants' " (*People v Jones,* 90 NY2d at 837, quoting *People v McRay,* 51 NY2d at 601, 604). A "telltale sign" such as the exchange of a glassine envelope, however, is not an indispensable prerequisite to probable cause (*see People v Jones,* 90 NY2d at 837). Therefore, notwithstanding that the arresting officer at bar did not further describe the small object passed by the defendant in exchange for currency, an inference of probable cause still may properly be drawn when there are present other indicia of a drug transaction (*id.*; *see People v McRay,* 51 NY2d at 604; *see e.g. People v McCants,* 67 AD3d 821 [2009]; *People v Graham,* 211 AD2d 55, 58-59 [1995]). Thus, "[i]n a probable cause analysis, the emphasis should not be narrowly focused on a recognizable drug package or any other single factor but on an evaluation of the totality of circumstances, which takes into account the realities of everyday life unfolding before a trained officer who has to confront, on a daily basis, similar incidents" (*People v Graham,* 211 AD2d at 58-59 [internal quotation marks omitted]).

Here, the exchange occurred in an area rampant with narcotics activity, the character of which was known to the arresting officer, a qualified observer (*see People v McRay,* 51 NY2d at 598, 604; *People v McCants,* 67 AD3d 821 [2009]; *People v Shaw,* 193 AD2d 390, 391 [1993]), and the arresting officer also observed that the area was littered with drug paraphernalia (*see People v McRay,* 51 NY2d at 606; *People v Bittner,* 97 AD2d 33,

37 [1983]). Further, the subject area was not merely a neighborhood known for drug sales where a resident was lawfully present, but was under an expressway in an area where the defendant and others were not authorized to be (*cf. People v Wilson,* 175 AD2d 15, 18 [1991]). Moreover, contrary to the defendant's contention, the fact that the police may have used the drug arrests as a pretext for removing homeless people from the subject area has no effect on the legality of the arrest (*see People v Hampton,* 44 AD3d 1071, 1072 [2007]; *see also People v Amuso,* 44 AD3d 781, 783 [2007]; *People v Lightfoot,* 22 AD3d 865, 866 [2005]).

Thus, the motion court properly drew an inference of probable cause from the testimony of the arresting officer, a qualified observer, which provided the requisite assurance that the observer had witnessed an illicit dealing rather than an innocent encounter (*see People v McRay,* 51 NY2d at 604). Therefore, the motion court properly denied suppression.

Viewing the evidence in the light most favorable to the People (*see People v Cabey,* 85 NY2d 417, 420 [1995]), there was legally sufficient evidence from which a jury reasonably could infer that the small object which the police officer observed the defendant pass to another person, upon receipt of money, was a packet of illegal narcotics (*see People v Wright,* 209 AD2d 562 [1994]; *People v Floyd,* 177 AD2d 310 [1991]), constituting a criminal sale of a controlled substance in the third degree (*see* Penal Law § 220.39 [1]).

In fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15 [5]; *People v Danielson,* 9 NY3d 342 [2007]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo,* 2 NY3d 383, 410 [2004], *cert denied* 542 US 946 [2004]; *People v Bleakley,* 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero,* 7 NY3d 633 [2006]). Skelos, J.P., Dickerson, Eng and Sgroi, JJ., concur.